**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| **JOHN MCDOWELL,** | ) |
| **Plaintiff,** | ) **Case No. 11-cv-2230** |
| v. | ) |
| **PAUL TALBOT,** | ) |
| **Defendant.** | ) |

**OPINION**

This is an Eighth Amendment prisoner case. The prisoner-plaintiff complains that his prison doctor has been deliberately indifferent to his serious medical needs. This case is before the court for ruling on a motion for summary judgment (#30) filed by Defendant. Plaintiff has filed neither an opposing brief nor a response to Defendant's undisputed material facts even though he was given over two months to do so. The court has carefully reviewed Plaintiff's complaint and the brief filed by Defendant supporting the present motion. Following this careful review, and taking the facts and documentation provided by Defendant to be true, Defendant's Motion for Summary Judgment (#30) is GRANTED.

**FACTS**[1]

---

[1] Facts are taken from Defendant's Undisputed Material Facts in his Motion for Summary Judgment where they are supported by affidavits or other record documentation (#30). As Plaintiff has not filed a response to the motion, despite being warned by the court (#31),

- 1 -

Defendant Talbot has been the Medical Director at the Danville Correctional Center since October 2009. Defendant saw Plaintiff for the first time on March 26, 2010. Defendant conducted a routine physical examination and found hypertension, complaints of constipation, and a history of a GI ulcer bleed.

On July 25, 2010, Plaintiff was seen in the Health Care Unit, complaining of constipation and shoulder pain. Regarding the former, Plaintiff was instructed to increase his level of physical activity and select fruit and vegetables for his diet whenever possible. Regarding the latter, Defendant examined Plaintiff and found that he had full range of motion and full extension. Plaintiff was given Motrin and instructed to return if his symptoms worsened or interfered with his daily functioning.

On September 24, 2010, Plaintiff was seen by a different physician at the health care center, complaining of shoulder pain. He indicated that the pain was due to slipping onto a concrete wall. Plaintiff was instructed on range-of-motion stretches, provided a warm pack, and a muscle balm to use twice daily for 30 days.

On January 18, 2011, Plaintiff complained to Defendant that he had infrequent bowel movements and refused to eat the soy-based food served at the prison. Defendant's clinical exam showed no gastrointestinal obstructions, but Defendant ordered an X-ray radiograph nonetheless.

On January 25, 2011, Plaintiff received an X-ray examination of his abdomen. The X-ray showed that Plaintiff's bowel gas pattern appeared to be within normal limits, but had a large amount of stool.

---

the court shall deem the motion to be admitted and must take Defendant's facts as true. Local R. 7.1(D)(2); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997).

On February 3, 2011, Defendant reviewed Plaintiff's radiography image and ordered a rectal suppository to alleviate constipation.

On March 15, 2011, Plaintiff complained of shoulder pain to Defendant. Defendant found Plaintiff had good strength, no deformities, and could actively elevate both arms above his shoulders. Defendant ordered Plaintiff to receive a baseline Hypertension Clinic appointment; a low sodium diet; an X-ray of the AC joint in his shoulder; prescription baclofen, a muscle relaxant, for 30 days; and a low bunk permit for a year.

On March 25, 2011, Plaintiff received an X-ray examination of his shoulder. Defendant read the X-ray radiograph to show that Plaintiff had mild osteoarthritis of the AC joint, with no regional bony fractures or dislocations.

On April 5, 2011, Defendant told Plaintiff that he had osteoarthritis of the shoulder. Plaintiff indicated that the baclofen did not control his discomfort, so Defendant discontinued the baclofen and prescribed prescription naproxen.

On July 12, 2011, Plaintiff again complained of shoulder pain. Defendant found that Plaintiff was not in acute distress and had good range of motion. Plaintiff indicated that he refused to take the naproxen. Defendant ordered Plaintiff's naproxen discontinued.

On August 24, 2011, Plaintiff again complained of shoulder pain. Defendant ordered him to receive ibuprofen for his shoulder pain, based on Plaintiff's averments that Tylenol did not reduce his discomfort.

On September 22, 2011, Plaintiff again complained of shoulder pain. During the evaluation, Defendant noted that Plaintiff's AC joint was tender. Defendant then

conducted a number of measurements and range-of-motion tests to determine if Plaintiff may have a soft tissue or muscle injury. Defendant measured the distances between Plaintiff's mid-humorous and mid-clavicle on both his right and left shoulders. Defendant also performed an evaluation of Plaintiff's range-of-motion by measuring the internal rotation and external rotation of his right shoulder. Defendant noted that Plaintiff had full and unlimited rotation internally and externally of his right shoulder. Defendant assessed Plaintiff, consistent with the results of his evaluation and prior x-ray, as suffering from chronic osteoarthritis of the right AC joint. Plaintiff was provided education and counseling on the issue, and Defendant ordered Plaintiff to receive naproxen twice a day for 60 days.

On October 11, 2011, Plaintiff complained to Defendant about a ringing sensation in his ear. Defendant evaluated Plaintiff and found no deafness and no vertigo, and that Plaintiff could hear and understand speech. Defendant found a small ulcer on his right tympanic membrane. Defendant ordered Plaintiff to receive cortisporin otic drops and antibiotic acyclovir for any possible infection.[2]

---

[2] Of note in gauging Plaintiff's credibility on this issue is an inconsistency in his testimony at deposition. Plaintiff testified as follows:

> Q (Douglass Bitner, counsel for Defendant). You said you were given ear drops?
> A (Plaintiff). Yeah, he gave me some.
> [ * * *]
> Q. And you said you continue to use that regularly?
> A. Yeah, every day.
> Q. How often--you use it every day?
> A. Twice a day.
> Q. Twice a day.
> A. Yeah.
> [ * * * ]
> Q. And you said you're still using it today?
> A. Yeah, I've been using it.

Plaintiff later also saw Defendant on November 2, 2011; March 15, 2012; and July 3, 2012, during regularly scheduled hypertension clinic visits.

**PROCEDURAL HISTORY**

On September 28, 2011, Plaintiff filed his complaint (#1) against Keith Anglin, Victor Calloway, Mary Miller, and Paul Talbot. On September 29, 2011, this court reviewed the complaint and found that various separate, unrelated claims against defendants violated Fed. R. Civ. P. 20(a), and allowed Plaintiff to amend his complaint. On October 6, 2011, Plaintiff filed his amended complaint (#4). On October 25, 2011, this court held a merit review hearing, and found Plaintiff's complaint sufficient regarding single claim of deliberate indifference to his serious medical needs against Defendant Talbot, and dismissed the remaining defendants. On June 29, 2012, Defendant filed a notice that Plaintiff's deposition would be taken on July 5, 2012 (#24). On

---

[ * * *]
Q. Have you ever gotten another bottle from anyone or are you still using the same bottle Dr. Talbot gave you?
A. The one he gave me I run out of it. I still got the bottle. I haven't been back to him.
Q. Well, how are you using it today if you ran out of what Dr. Talbot gave you? Who is giving you more prescriptions --
A. Ain't nobody gave me nothing, I said of the bottle that he gave -- you are misunderstanding me. Don't put the wrong thing down
Q. Make sure I'm clear here.
A. Okay. I still had a bottle. I told you what he gave me so when you asked me about it I can bring the bottle and show you this is what he gave me. I don't throw away nothing.
Q. Do you still use ear drops today?
A. No.
Q. How long did those ear drops last you that Dr. Talbot gave you?
A. They last me for a good little while and they ran out and I got no more. And I never went back to him to get no more because I refused to see him. The only time I see him is when they send me a request form here for my hypertension.

September 14, 2012, Defendant filed the present motion for summary judgment, accompanied by an affidavit of Defendant and medical records (#30). On September 25, 2012, the court issued to Plaintiff a Notice regarding summary judgment procedures. The substance of that notice read, in its entirety, as follows:

> Dear Mr. McDowell:
>
> NOTICE IS HEREBY GIVEN that a case-dispositive motion (such as a motion for summary judgment or motion for judgment on the pleadings) has been filed. See, Fed.R.Civ.P.56. Please be advised that you have **twenty-one (21)** days from the date of service to respond to the motion. If you do not respond, the motion, if appropriate, will be granted and the case will be terminated without a trial. See, generally, Lewis v. Faulkner, 689 F. 2d 100 (7th Cir. 1982); Timms v. Frank, 953 F. 2d 281 (7th Cir. 1992). Under the court's local rules, a motion is deemed to be uncontested if no opposing brief is filed. See L.R. CDIL 7.1(D)(2).
>
> When a motion for summary judgment is made and properly supported, you must not simply rely upon the allegations made in your complaint. Rather, you must respond by affidavit(s) or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, a copy of which is attached. Your response must set forth specific facts showing that there is a genuine issue of material fact for trial. If you do not submit affidavits or other documentary evidence contradicting the defendants' assertions, the defendants' statement of facts will be accepted as true for purposes of summary judgment. **See Fed. R. Civ. P 56(e) and L.R. 7.1(attached).**

(#31) (emphasis in original). Attached to the notice was Fed. R. Civ. P. 56(e) and Local R. 7.1.

On October 29, 2012, Plaintiff sent a letter to this court. The letter stated that Plaintiff "had an interview" with Defendant's counsel and discussed what Plaintiff had been charged with. Plaintiff requested that the Clerk of the Court communicate to Defendant's counsel that "he cannot use this case I have against me in the court of law" and that he had "made a mistake talking to him about [his] case." On October 30, 2012,

the court responded, indicating that the present case was not currently on appeal, and that the court was unaware of the status of the state proceedings that led to his incarceration.[3]

As of the date of this opinion, Plaintiff has not filed a response to Defendant's Motion for Summary Judgment (#30).

## ANALYSIS

Rule 7.1(D)(2) of the Local Rules of the Central District of Illinois provides that "[w]ithin 21 days after service of a motion for summary judgment, any party opposing the motion must file a response. A failure to respond will be deemed an admission of the motion." Rule 7.1(D)(2)(b)(6) provides that the "failure to respond to any numbered fact will be deemed an admission of the fact." The Seventh Circuit has repeatedly held that such a rule is "entirely proper." *Doe v. Cunningham*, 30 F.3d 879, 882 (7th Cir. 1994). Therefore, when the non-movant does not respond to the movant's statement of facts, the non-movant concedes the movant's version of the facts. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994); *Columbia Pictures Indus., Inc. v. Landa*, 974 F. Supp. 1, 3 (C.D. Ill. 1997). However, a party's failure to submit a timely response to a motion for summary judgment does not automatically result in summary judgment for the moving party. *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 392 (7th Cir. 1995); *see also Archer Daniels Midland Co. v. Whitacre*, 60 F. Supp. 2d 819, 823 (C.D. Ill. 1999). It remains "the movant's burden to demonstrate that no genuine issue of material fact exists and that he is entitled to summary judgment as a matter of law." *Doe*, 30 F.3d at 883.

---

[3] As an aside, at first glance, it does not appear that Defendant's counsel violated any rules of professional conduct, such as Illinois R. 4.2, because Defendant was not at that time represented by counsel. (*See* Text Order of January 31, 2012, postponing the decision to appoint pro bono counsel.)

Accordingly, the district court must make the further finding that summary judgment is proper as a matter of law. *LaSalle Bank*, 54 F.3d at 392, *quoting Wienco Inc. v. Katahn Assocs., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992).

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. *Waldridge*, 24 F.3d at 920.

The Eighth Amendment forbids prisons and prison doctors from engaging in deliberate indifference to serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The deprivation must not only be objectively sufficiently serious, but also the prison official must have acted or failed to act despite his knowledge of a substantial risk of serious harm. *Vance v. Peters*, 97 F.3d 987, 991-92 (7th Cir. 1996), *citing, in part*, *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

Here, Defendant argues that summary judgment is appropriate because the undisputed facts show neither that he was deliberately indifferent to Plaintiff's medical needs, nor that Plaintiff had any sufficiently serious medical needs. This court agrees. Defendant has provided supporting documentation showing that there is no factual support for Plaintiff's claims of deliberate indifference to a serious medical need.

It is unlikely that garden-variety osteoarthritis,[4] tinnitus,[5] and gastrointestinal

---

[4] *See, e.g.*, *Wright v. Antonini*, 41 F. App'x 824 (6th Cir. 2002); *Gillespie v. New York State Dept. of Corr. Services*, 9:08CV1339 TJM/ATB, 2010 WL 1006634 (N.D.N.Y. Feb. 22, 2010) (collecting cases)).

discomfort from a soy diet[6], without any evidence of further risk of "serious harm" categorically constitute a sufficiently serious medical need protected by the Constitution. However, it is clear from the uncontested facts that Defendant did not fail to act. The facts show that Defendant saw Plaintiff on numerous occasions and responded with a treatment plan and a variety of treatments to Plaintiff's medical complaints. Regarding the osteoarthritis, Defendant saw Plaintiff at least seven times, ordered and performed an X-ray examination, tested his range of motion on several occasions, and provided education and counseling. Defendant also prescribed a muscle balm and muscle relaxant; when that was not satisfactory, he provided also two different pain relievers. Regarding the constipation, Defendant saw Plaintiff four times, conducted an X-ray examination, provided education, and prescribed medications. Regarding the ringing sensation, Defendant conducted an exam and prescribed medications.

A prisoner's disagreement with the professional judgment of his treating physician is not a basis for claiming deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Although the choice of a "less efficacious treatment" may still amount to deliberate indifference, there is neither allegation nor evidence that there were more effective treatments for any of Plaintiff's complaints. *Id*. Based upon the undisputed facts and the applicable case law, this court agrees with Defendant that he was not deliberately indifferent to Plaintiff's serious medical needs, and is therefore entitled to judgment against Plaintiff as a matter of law.

---

[5] *See, e.g.*, *Cooper v. Johnson*, 353 F. App'x 965, 968 (5th Cir. 2009); *Smith v. Johnson*, 05-74-C-1, 2005 WL 1869037 (M.D. La. July 29, 2005).
[6] *See, e.g., Montgomery v. Obaisi*, 11-CV-3266, 2011 WL 3746303 (C.D. Ill. Aug. 25, 2011); *Vaughn v. Kerley*, 897 F. Supp. 1413, 1419 (M.D. Fla. 1995)

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion for Summary Judgment [30] is GRANTED.

(2) Judgment is entered in favor of Defendant and against Plaintiff.

(3) The final pretrial conference scheduled for December 7, 2012, and the jury trial scheduled for December 17, 2012 are VACATED.

(4) This case is terminated.

ENTERED this 30th day of November, 2012

**s/ Michael P. McCuskey**

MICHAEL P. McCUSKEY
U. S. DISTRICT JUDGE